FRANK HEABLER, JR., Petitioner-Appellant, v. MUNICIPAL OFFICERS ELECTORAL BOARD OF THE VILLAGE OF LAKEMOOR *et al.*, Respondents-Appellees.

Second District    No. 2—03—0345

Opinion filed May 5, 2003.

GILLERAN JOHNSON, J., dissenting.

John L. Miller, of Woerthwein & Miller, of Chicago, for appellant.

Lisa M. Waggoner, of Waggoner Law Firm, P.C., of Crystal Lake, for appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

Petitioner, Frank Heabler, Jr., appeals from the March 19, 2003, judgment of the circuit court of McHenry County that affirmed the decision of the Municipal Officers Electoral Board of the Village of Lakemoor (the Electoral Board) sustaining objections to petitioner's nominating papers filed for the April 1, 2003, Village of Lakemoor (Lakemoor) trustee election. We affirm.

On January 13, 2003, petitioner filed nominating papers to be a candidate for trustee in the April 1, 2003, consolidated election in Lakemoor. The nominating papers included both a statement of candidacy and petitions for nomination that were signed by voters. There were two different types of trustee offices to be filled in the election. The first type was the full-term trustee office and carried a term of four years. The second type was created by a vacancy and carried a term of two years. A document distributed to candidates by Lakemoor stated that there were three four-year trustee offices and one two-year office to be filled in the election. The same document admonished the candidates to consult competent legal counsel in filing their petitions for nomination. Despite the two types of trustee offices available, petitioner identified the office he sought only as "trustee" on all of his nominating papers.

Ralph Brindise, an incumbent trustee who was also running in the April 1 election, objected to petitioner's nominating papers on the basis that they did not identify which type of trustee position petitioner sought. On February 3, 2003, the Electoral Board held a hearing on Brindise's objections. At the hearing, petitioner testified that the office he sought was trustee for a four-year term. On February 5, 2003, the Electoral Board sustained Brindise's objections, finding that petitioner had not identified which type of trustee office he was seeking in any of his nominating papers. As a result of this decision, petitioner's name was removed from the ballot. On March 19, 2003, the circuit court of McHenry County affirmed the Electoral Board's decision.

This court has granted accelerated review of this case under Supreme Court Rule 311 (155 Ill. 2d R. 311). We review the decision of the Electoral Board *de novo* because it involves a question of law. *Brennan v. Kolman*, 335 Ill. App. 3d 716, 719 (2002).

On appeal, petitioner argues that his description of the office

sought as "trustee" was sufficient because a general description of an office is presumed to refer to the full-term office unless otherwise specified. We disagree.

■ A description of the office sought by a candidate is generally sufficient where there is "no basis for confusion as to the office for which the nominating papers were filed." *Lewis v. Dunne*, 63 Ill. 2d 48, 53 (1976). There is no basis for confusion where, looking at the nominating papers as a whole, it is clear which position the candidate seeks. *Lewis*, 63 Ill. 2d at 53.

In *Lewis*, a candidate for appellate judge described the office he sought only as " 'Judge of the Appellate Court of Illinois, First Judicial District' " on his statement of candidacy. *Lewis*, 63 Ill. 2d at 50. The candidate properly described the office as " 'Judge of the Appellate Court of Illinois, First Judicial District, to fill the vacancy created by the retirement of the Honorable Robert E. English' " on his petitions for nomination. *Lewis*, 63 Ill. 2d at 49-50. The candidate's nominating papers were challenged on the basis that the statement of candidacy did not describe the specific vacancy the candidate sought. *Lewis*, 63 Ill. 2d at 50. The supreme court held that the nominating papers were valid based on two factors. First, there was "no basis for confusion as to the office for which the nominating papers were filed." *Lewis*, 63 Ill. 2d at 53. Taken as a whole, the nominating papers, of which both the statement of candidacy and the petitions for nomination are part, clearly identified the office that the candidate sought because a specific description of the office was included in the petitions for nomination. *Lewis*, 63 Ill. 2d at 53. Second, there was nothing about the statement of candidacy itself that made it necessary for the specific description of the office to be included therein. The purpose of a statement of candidacy is to obtain a sworn statement from the candidate establishing his qualifications to enter the primary election for the office he seeks. *Lewis*, 63 Ill. 2d at 53. The general description of the office is the functional equivalent of the specific description for this purpose. *Lewis*, 63 Ill. 2d at 53. Thus, there was no reason for the statement of candidacy to contain more than a general description of the office where other nominating papers contained the specific description.

*Zapolsky v. Cook County Officers Electoral Board*, 296 Ill. App. 3d 731 (1998), a First District case cited by respondents, held that the failure to specify the precise office sought on petitions for nomination *per se* renders nominating papers invalid even where the specific office is identified on other nominating papers. In *Zapolsky*, there were full-term offices and a vacancy to be filled in the election. *Zapolsky*, 296 Ill. App. 3d at 732. The candidate, however, described the office she sought on her petitions for nomination only as " 'Commissioner of the

Metropolitan Water Reclamation District of Greater Chicago.' " *Zapolsky*, 296 Ill. App. 3d at 732. The candidate correctly identified the office in her statement of candidacy and economic statement as " 'Commissioner of the Metropolitan Water Reclamation District of Greater Chicago to fill the vacancy for the unexpired two (2) year term.' " *Zapolsky*, 296 Ill. App. 3d at 732. As in *Lewis*, there was no basis for confusion as to the office for which the nominating papers were filed because the statement of candidacy and economic statement sufficiently delineated that information. The court, however, held that petitions for nomination always must identify the specific vacancy sought because of their distinctive purpose. *Zapolsky*, 296 Ill. App. 3d at 734. According to the court, "[t]he apparent purpose of nominating petitions signed by voters is to expand the informed participation of members of the respective parties in their primary election." *Zapolsky*, 296 Ill. App. 3d at 734. The court concluded that to accomplish this purpose "[a] potential signatory to a nominating petition has the right to know the specific vacancy sought by the candidate so that the signatory may make an informed decision to sign the petition or support another candidate for the same vacancy." *Zapolsky*, 296 Ill. App. 3d at 734.

The conclusion in *Zapolsky* is questionable. *Zapolsky* premised its holding on its finding that "[t]he apparent purpose of nominating petitions signed by voters is to expand the informed participation of members of the respective parties in their primary election." *Zapolsky*, 296 Ill. App. 3d at 734. *Zapolsky* cited no authority for this finding. Other cases have held, more logically, that the primary purpose of the signature requirement is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters. *Lockhart v. Cook County Officers Electoral Board*, 328 Ill. App. 3d 838; 844 (2002); *Huskey v. Municipal Officers Electoral Board*, 156 Ill. App. 3d 201, 206 (1987); *Merz v. Volberding*, 94 Ill. App. 3d 1111, 1118 (1981); *Briscoe v. Kusper*, 435 F.2d 1046, 1054 (7th Cir. 1970).

We need not decide whether to adopt the *Zapolsky* holding in the Second District, however. Unlike *Zapolsky* and unlike *Lewis*, here petitioner did not identify which of the two offices he sought on *any* of his nominating papers. A candidate's description of the office he seeks may not create "basis for confusion as to the office for which the nominating papers were filed." *Lewis*, 63 Ill. App. 3d at 53. In *Lewis*, the supreme court held that the failure to specifically identify the office sought in a statement of candidacy was excused where other nominating papers did so. *Lewis*, 63 Ill. App. 3d at 53. Here none of

the nominating papers indicate which of the two trustee offices petitioner sought. As a result, it is not clear from the nominating papers which trustee office petitioner intended to run for. This constitutes a basis for confusion as to the office for which the nominating papers were filed.

■ Petitioner argues that his general description of the office he sought was sufficient because nominating papers are considered filed for the full-term office unless otherwise specified. According to petitioner, only a candidate seeking to fill an office created by a vacancy need give a specific description of the office he seeks because a vacancy is "an exception to the statutory scheme." Petitioner premises this assertion on the fact that the statute provides for trustees to serve a four-year term. 65 ILCS 5/3.1—25—5 (West 2000). The trouble with this argument is that the statute also provides for trustees to serve less than a four-year term where they fill a vacancy. 65 ILCS 5/3.1—10—50(b) (West 2000). Thus, an office created by a vacancy is not "an exception to the statutory scheme" but, rather, specifically provided for by statute.

Petitioner, in essence, asks us to create a default rule that a general description of an office sought is presumed to refer to the full-term office unless otherwise specified. We have found no authority that supports such a rule. Under *Lewis*, a candidate must make clear the office that he seeks somewhere in his nominating papers. We do not find this rule unduly burdensome such that we need qualify it today. Accordingly, petitioner's nominating papers are invalid because he failed to specify which of the two trustee positions he sought.

■ Petitioner additionally argues that the Electoral Board was estopped to remove his name from the ballot because Lakemoor published a document listing available offices that classified both the two-year and the four-year trustee offices as "trustee." Before an estoppel against a public body can be found, it must be shown that an affirmative act occurred on the part of the governmental body that induced substantial reliance by the litigant. *Schumann v. Kumarich*, 102 Ill. App. 3d 454, 460 (1981). Petitioner does not even argue that he relied on the document in failing to specify which of the two trustee positions he sought. Nor can he. The same document made clear that there were two types of trustee offices available and even admonished petitioner to consult competent legal counsel in filing his petitions for nomination. The Electoral Board was not estopped to remove petitioner's name from the ballot.

The judgment of the circuit court of McHenry County is affirmed.

Affirmed.

KAPALA, J., concurs.

JUSTICE GILLERAN JOHNSON, dissenting:

I respectfully dissent. I believe that the petitioner complied with section 7—10 of the Election Code (10 ILCS 5/7—10 (West 2000)), which requires that a candidate's nominating papers state the office that the candidate seeks.

Specifically, section 7—10 of the Election Code provides that the statement of candidacy must state the candidate's name, his political party, his place of residency, and the office he seeks. 10 ILCS 5/7—10 (West 2000). The statement of candidacy must also be notarized. 10 ILCS 5/7—10 (West 2000). Additionally, section 7—10 of the Election Code provides that a candidate's petitions for nomination be uniform in size, contain a certain number of signatures, and be fastened together in book form. 10 ILCS 5/7—10 (West 2000). Each nominating petition must state the candidate's name, his address, and the office he seeks. 10 ILCS 5/7—10 (West 2000).

In accordance with section 7—10 of the Election Code, the petitioner stated, in both his nominating petition and statement of candidacy, that he sought the office of "trustee." That the petitioner did not designate whether he desired a four-year or two-year term did not render his description of the office insufficient. As noted above, section 7—10 of the Election Code sets out the precise form of a candidate's nominating papers. However, nowhere in section 7—10 of the Election Code does it require a candidate to designate the term of the office he desires. See 10 ILCS 5/7—10 (West 2000).

The majority's imposition of such a requirement on a candidate that he state the length of term he desires is, in the present case, superfluous, as the term of office of a trustee is defined by statute. Particularly, the Illinois Municipal Code (65 ILCS 5/3.1—25—5 (West 2000)) (the Municipal Code) provides: "In each village incorporated under this Code, the electors of the village shall elect 6 trustees. The term of office of the trustees shall be 4 years ***."

Although the Municipal Code also provides for trustees to serve less than four years in instances where they fill a vacancy (65 ILCS 5/3.1—10—50 (West 2000)), this does not contravene the general rule that a trustee is an elected four-year position. The majority's position that there was a basis for confusion herein is therefore flawed. It was obvious that the petitioner was not seeking to fill a vacancy. The

petitioner's nominating petition and statement of candidacy clearly indicated that the petitioner was seeking the position of trustee, which by statute is defined with a four-year term. Accordingly, the majority's suggestion that there was confusion over how long a term of office the petitioner was seeking is unfounded.

Even if section 7—10 of the Election Code did require the petitioner to state the length of the term he sought, such an omission was inconsequential, and the Electoral Board should have found that the petitioner substantially complied. It is a fundamental principle that access to a place on the ballot is a substantial right and not lightly to be denied. *Nolan v. Cook County Officers Electoral Board*, 329 Ill. App. 3d 52, 55 (2002). The petitioner's failure to describe the position he sought more precisely was, at maximum, a minor error. A minor error in a candidate's nominating papers should not result in a candidate's removal from the ballot. *Sullivan v. County Officers Electoral Board*, 225 Ill. App. 3d 691, 693 (1992).

I am mindful that compliance with section 7—10 of the Election Code has been held to be mandatory and not directory. See *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469, 470 (1980). However, substantial compliance has been held, in some circumstances, to satisfy even certain mandatory requirements of the Election Code, including section 7—10. See *Courtney v. County Officers Electoral Board*, 314 Ill. App. 3d 870, 876 (2000) (finding that the candidate had substantially complied with section 7—10 of the Election Code even though he failed to simultaneously file his nominating petitions with his statement of candidacy); *Panarese v. Hosty*, 104 Ill. App. 3d 627, 628-29 (1982) (finding that the candidate substantially complied with section 7—10 of the Election Code even though he omitted his street and number from his nominating petition); *Madden v. Schumann*, 105 Ill. App. 3d 900, 903 (1982) (holding that the candidate's omission of the phrase "is a registered voter" from the circulator's oath, as required by section 7—10 of the Election Code, was a technical deviation that did not warrant removal from the ballot); *Stevenson v. County Officers Electoral Board*, 58 Ill. App. 3d 24, 26 (1978) (finding that the candidate's failure to number his nominating petitions consecutively, as required by section 7—10 of the Election Code, was a mere technical deficiency that did not render his nominating papers invalid).

Even *Lewis*, upon which the majority hangs its hat, establishes that a candidate can satisfy section 7—10 of the Election Code with substantial compliance. The *Lewis* court specifically held that the candidate "substantially complied" with section 7—10 of the Election Code even though he failed to describe the particular vacancy that he was seeking in his statement of candidacy. *Lewis*, 63 Ill. 2d at 53.

Although the *Lewis* court predicated its finding of substantial compliance on the fact that the candidate's nominating papers as a whole did describe the particular vacancy that the candidate was seeking, describing a particular vacancy in this case was not necessary because, as noted above, the petitioner was not seeking a vacancy. What was required, rather, was that the petitioner state the office he was seeking. This, I believe, the petitioner did.

On a final note, the provisions of the Electoral Code are designed to protect the integrity of the electoral process. *Welch v. Johnson*, 147 Ill. 2d 40, 56 (1992). Furthermore, villages such as Lakemoor have a legitimate interest in regulating the number of candidates on the ballot. Yet, when access to the ballot is involved, the restriction on that access should require the least drastic measure to achieve these ends. In this case, removing the petitioner from the ballot was a drastic measure that did little to protect the integrity of the electoral process. Moreover, the Village of Lakemoor's interests in this case were far outweighed by the petitioner's right to access on the ballot and the voters' right to elect a candidate of their choice. Frank Heabler should have been listed on the ballot for the April 1, 2003, election as a candidate for trustee.

For the above reasons, I believe the Electoral Board's removal of the petitioner from the ballot was erroneous.