GREGORIO SALGADO, Petitioner-Appellant, v. DAVID MARQUEZ *et al.*, Respondents-Appellees.

Second District    No. 2—05—0154

Opinion filed April 20, 2005.

GILLERAN JOHNSON, J., specially concurring.

Victor P. Armendariz and Cynthia M. Stenner, both of Law Office of Victor P. Armendariz, of Maywood, for appellant.

Patrick M. Kinnally, of Kinnally, Krentz, Loran, Hodge & Herman, P.C., of Aurora, for appellee David Marquez.

Peter K. Wilson, Jr., and Dean M. Frieders, both of Mickey, Wilson, Weiler, Renzi & Andersson, P.C., of Aurora, for other appellees.

JUSTICE KAPALA delivered the opinion of the court:

Petitioner, Gregorio Salgado, appeals from the order of the circuit court of Kane County that affirmed the decision of respondent Municipal Officers Electoral Board of the City of Aurora (Board), which found that petitioner's objections to the nominating papers of respondent David Marquez were not sustained. We reverse.

## I. BACKGROUND

Marquez sought to run for the office of alderman for the second ward of the City of Aurora. On December 6, 2004, Marquez filed his nominating papers, consisting of nominating petitions,[1] a statement of candidacy, a statement of economic interest, and a loyalty oath. The nominating petitions requested that the "named person shall be a Nonpartisan Candidate for nomination *** to the office hereinafter specified *** to be voted for at the primary Election to be held on

---

[1]The phrases "nominating petitions" and "petitions for nomination" are used interchangeably in this opinion.

02/22/05." Each nominating petition also contained a box with a heading that read "OFFICE." Underneath this heading was printed "(circle one) full term or vacancy." Each of Marquez's nominating petitions had the words "full term" circled underneath the "OFFICE" heading. There was no other writing contained in the "OFFICE" box. None of the nominating petitions contained any indication of which office Marquez sought. Marquez's statement of candidacy did correctly list the office he sought.

On December 20, 2004, petitioner filed objections to the nominating petitions. Among the objections made was that Marquez failed to include the office for which he was running on his nominating petitions and that this failure rendered the nominating petitions invalid. The Board held a hearing on petitioner's objections. Petitioner was not present but sent a representative in his stead. The Board concluded that even without petitioner's presence, it could rule on at least some of petitioner's objections, including his objection to Marquez's failure to list the office sought on his nominating petitions. After the hearing, the Board ruled that because Marquez's nominating papers as a whole indicated the office he sought, there was no basis for confusion as to which office Marquez was seeking. The Board found that all of petitioner's objections were not sustained.

Petitioner sought review in the circuit court of Kane County. The circuit court affirmed the decision of the Board. Petitioner then timely appealed to this court. We granted accelerated review of this case under Supreme Court Rule 311 (155 Ill. 2d R. 311).

## II. DISCUSSION

First, we note that Marquez, in his appellee's brief, requests that we strike portions of petitioner's brief that are not supported by citation to the record. Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)) requires the appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." However, the portions of petitioner's brief of which Marquez complains are not relevant to our decision and, therefore, we will not strike them.

On appeal, petitioner contends that we should reverse the rulings of the circuit court and the Board for two reasons. First, petitioner contends that the Board erred in determining that Marquez's failure to list the office he sought on his nominating petitions did not render the nominating petitions invalid. Second, petitioner contends that Marquez's nominating petitions contained the actual or forged

signature of a board member and that the presence of this signature warrants reversal. We agree with petitioner's first contention and find it dispositive. Accordingly, we do not reach petitioner's second contention.

There is no dispute that Marquez did not list the office he sought on any of his nominating petitions. Consequently, the question presented to us is whether Marquez's nominating petitions meet the requirements of section 7—10 of the Illinois Election Code (Code) (10 ILCS 5/7—10 (West 2002)). This is a question of law, which we review *de novo. Heabler v. Municipal Officers Electoral Board,* 338 Ill. App. 3d 1059, 1060 (2003).

■ Section 7—10 governs the form and content of nominating petitions. Section 7—10 states, "[e]ach sheet of the petition other than the statement of candidacy and candidate's statement shall be of uniform size and shall contain above the space for signatures an appropriate heading giving the information as to name of candidate or candidates, in whose behalf such petition is signed; the office, the political party represented and place of residence; and the heading of each sheet shall be the same." 10 ILCS 5/7—10 (West 2002). We note parenthetically that petitioner also references section 10—4 of the Code (10 ILCS 5/10—4 (West 2002)) in his objection. Respondents do not challenge the applicability of either section 7—10 or section 10—4 to this case. "Section 10—4 applies only to persons seeking nomination as independent or nonpartisan candidates in a *general* election." (Emphasis added.) *Wollan v. Jacoby,* 274 Ill. App. 3d 388, 395 (1995). Section 7—10 states that "[t]he name of no candidate for nomination, or State central committeeman, or township committeeman, or precinct committeeman, or ward committeeman or candidate for delegate or alternate delegate to national nominating conventions, shall be printed upon the *primary* ballot unless a petition for nomination has been filed in his behalf as provided in this Article in substantially the following form." (Emphasis added.) 10 ILCS 5/7—10 (West 2002); see *Lewis v. Dunne,* 63 Ill. 2d 48, 52 (1976) (stating that the "general purpose of section 7—10 and related provisions of the Election Code is to provide an orderly procedure whereby qualified persons seeking public office may enter *primary* elections" (emphasis added)). Therefore, because Marquez's petition sought nomination as a nonpartisan candidate in the *primary,* not the general election, we prefer to analyze this case under section 7—10. However, even if section 10—4 were applicable, our analysis and result would be the same, as section 10—4 also requires that "[a]ll petitions for nomination under this Article 10 for candidates for public office in this State, shall in addition to other requirements provided by law, be as follows: Such

petitions shall consist of sheets of uniform size and each sheet shall contain, above the space for signature, an appropriate heading, giving the information as to name of candidate or candidates in whose behalf such petition is signed; *the office*; the party; place of residence; and such other information or wording as required to make same valid, and the heading of each sheet shall be the same." (Emphasis added.) 10 ILCS 5/10—4 (West 2002); see *Lucas v. Lakin*, 175 Ill. 2d 166, 167 n.1 (1997).

In *Lewis*, our supreme court addressed whether the petitioner's nominating papers were invalid when the statement of candidacy did not correctly list the office that the petitioner sought. The petitioner indicated on his petitions for nomination that he was running for " 'Judge of the Appellate Court of Illinois, First Judicial District, to fill the vacancy created by the retirement of the Honorable Robert E. English.' " *Lewis*, 63 Ill. 2d at 49-50. The statement of candidacy, however, indicated the office sought as " 'Judge of the Appellate Court of Illinois, First Judicial District.' " *Lewis*, 63 Ill. 2d at 50.

As we noted above, the *Lewis* court stated that the "general purpose of section 7—10 and related provisions of the Election Code is to provide an orderly procedure whereby qualified persons seeking public office may enter primary elections." *Lewis*, 63 Ill. 2d at 52. The court then stated that nominating petitions and statements of candidacy each serve particular purposes in regard to the general purpose. *Lewis*, 63 Ill. 2d at 52. Further, the court held that "[w]hile their sufficiency must be determined with reference to the particular function each was designed to accomplish, it was not intended that for all purposes they should be considered separate and apart as if the other did not exist." *Lewis*, 63 Ill. 2d at 52-53. Looking at the petitions for nomination and the statement of candidacy, the court determined that there was "no conflict or inconsistency between the description of the office in the petitions signed by electors and the statement of candidacy" and that "there was no basis for confusion as to the office for which the nominating papers were filed." *Lewis*, 63 Ill. 2d at 53. In so holding, the court stated that the apparent purpose of requiring a statement of candidacy was to obtain a sworn statement from the candidate establishing his qualifications to enter the primary election for the office he seeks. *Lewis*, 63 Ill. 2d at 53. The court found that the error in the office sought on the statement of candidacy did not affect the determination of whether the candidate was qualified for the office sought. See *Lewis*, 63 Ill. 2d at 53. Accordingly, the court found that the petitioner had substantially complied with section 7—10. *Lewis*, 63 Ill. 2d at 53.

In *Zapolsky v. Cook County Officers Electoral Board*, 296 Ill. App.

3d 731 (1998), the First District was faced with a statement of candidacy and a statement of economic interest that correctly listed the office sought but nominating petitions that did not list the correct office. The statement of candidacy and the statement of economic interest both stated that the petitioner was running for " 'Commissioner of the Metropolitan Water Reclamation District of Greater Chicago to fill the vacancy for the unexpired two (2) year term.' " *Zapolsky*, 296 Ill. App. 3d at 732. The petitions for nomination, however, stated the office sought as " 'Commissioner of the Metropolitan Water Reclamation District of Greater Chicago.' " *Zapolsky*, 296 Ill. App. 3d at 732. In arriving at its holding that the nominating petitions were invalid, the court found *Lewis* to be distinguishable. *Zapolsky*, 296 Ill. App. 3d at 734. The *Zapolsky* court found that the *Lewis* court had focused on the fact that the incorrect office was in the statement of candidacy, not the nominating petitions. *Zapolsky*, 296 Ill. App. 3d at 734. In the *Zapolsky* court's view, the *Lewis* court based its decision on its determination that the purpose of the statement of candidacy had been fulfilled and that there was no basis for confusion as to the office the candidate sought. *Zapolsky*, 296 Ill. App. 3d at 734. In contrast, the *Zapolsky* court found that in its case the error was on the nominating petitions, not the statement of candidacy. *Zapolsky*, 296 Ill. App. 3d at 734. The court found that the "apparent purpose of the nominating petitions signed by voters is to expand the informed participation of members of the respective parties in their primary election." *Zapolsky*, 296 Ill. App. 3d at 734. Further, the court held:

> "Nominating petitions should be free from a 'basis for confusion' as to the office for which they are filed. A potential signatory to a nominating petition has the right to know the specific vacancy sought by the candidate so that the signatory may make an informed decision to sign the petition or support another candidate for the same vacancy." *Zapolsky*, 296 Ill. App. 3d at 734.

Because it was uncontroverted that there were numerous vacancies on the reclamation district and that the petitioner obtained signatures from registered voters while failing to inform them of the specific vacancy sought, the court held that the petitioner did not strictly or substantially comply with section 7—10. *Zapolsky*, 296 Ill. App. 3d at 734-35. In the court's opinion, the nominating petitions were not free from a "basis for confusion" regarding the office sought. *Zapolsky*, 296 Ill. App. 3d at 735.

This court had occasion to discuss both *Lewis* and *Zapolsky* in *Heabler. Heabler*, 338 Ill. App. 3d at 1061-63. We held that *Lewis* stood for the proposition that "[a] description of the office sought by a candidate is generally sufficient where there is 'no basis for confusion

as to the office for which the nominating papers were filed' " and that there is no basis for confusion when, as a whole, the nominating papers make it clear which office the candidate seeks. *Heabler*, 338 Ill. App. 3d at 1061, quoting *Lewis*, 63 Ill. 2d at 53. In discussing *Zapolsky*, we suggested that the holding was questionable. *Heabler*, 338 Ill. App. 3d at 1062. Specifically, we questioned the holding of the *Zapolsky* court that the " 'apparent purpose of the nominating petitions signed by voters is to expand the informed participation of members of the respective parties in their primary election.' " *Heabler*, 338 Ill. App. 3d at 1062, quoting *Zapolsky*, 296 Ill. App. 3d at 734. First, we noted that the *Zapolsky* court cited no authority for this proposition. *Heabler*, 338 Ill. App. 3d at 1062. Then we stated that other courts have held, more logically, that the "primary purpose of the signature requirement is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters." *Heabler*, 338 Ill. App. 3d at 1062, citing *Lockhart v. Cook County Officers Electoral Board*, 328 Ill. App. 3d 838, 844 (2002); *Huskey v. Municipal Officers Electoral Board*, 156 Ill. App. 3d 201, 206 (1987); *Merz v. Volberding*, 94 Ill. App. 3d 1111, 1118 (1981); *Briscoe v. Kusper*, 435 F.2d 1046, 1054 (7th Cir. 1970). However, we found that we did not need to decide whether to adopt the holding of *Zapolsky*, because the petitioner in *Heabler* did not identify which of the two trustee offices he sought on *any* of his nominating papers. *Heabler*, 338 Ill. App. 3d at 1062-63. Therefore, we held that there was a basis for confusion as to the office sought. *Heabler*, 338 Ill. App. 3d at 1063.

In this case, it is undisputed that Marquez's nominating petitions do not list any office, except to indicate that a full-term office was sought. Petitioner contends that the voters in the ward in which Marquez was circulating his petitions will be voting for mayor, alderman for the second ward, and alderman at large. Respondents do not dispute this contention. Therefore, according to petitioner, voters were unaware as to whether they were signing petitions to nominate Marquez as mayor, alderman for the second ward, or alderman at large. Respondents assert that the statement of candidacy lists the correct office and that, therefore, taking the nominating papers as a whole, there is no basis for confusion as to the office Marquez sought.

■ In our opinion, Marquez's nominating papers do not substantially comply with section 7—10. Although this case does not require us to decide whether to adopt the holding of *Zapolsky*, we do agree with the *Zapolsky* court that the purpose of the nominating paper that lists the incorrect office must be taken into account when determining whether there has been compliance with section 7—10.

In determining whether a candidate has complied with section 7—10, *Lewis* sets forth two requirements. First, the nominating papers as a whole must not create a basis for confusion as to the office sought. Second, the purpose of the nominating paper that contains the incorrect office must not have been frustrated because of the error. See *Lewis*, 63 Ill. 2d at 52-53. In this case, it is clear that, as a whole, the nominating papers show that Marquez sought the office of alderman for the second ward. There is no conflict or inconsistency in the documents; the nominating petitions simply omit the office altogether. Therefore, the first requirement of the *Lewis* decision has been satisfied. With respect to the purpose of the nominating petitions, we reaffirm our statement in *Heabler* that the primary purpose of nominating petitions is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters. Even though Marquez's nominating petitions do demonstrate initiative because signatures were obtained, we do not believe that minimal appeal to eligible voters has been shown.

The minimal appeal component of the purpose of nominating petitions cannot be determined in a vacuum. In our opinion, the minimal appeal shown by nominating petitions can be demonstrated only by reference to a particular type of office. We find that this purpose was frustrated in the instant case. In determining whether offices are of the same or of a different type, we believe that, at a minimum, offices differ in type when the duties that they entail differ. The types of offices for which Marquez could have been running included the office of mayor and the office of alderman. It is obvious that these offices entail different duties. Because the voters were completely unaware of which office Marquez sought, the nominating petitions do not reveal whether Marquez demonstrated a minimal appeal to the voters as alderman. Perhaps the voters felt that Marquez had appeal as mayor, but not as an alderman. In fact, voters signing nominating petitions could have thought Marquez had appeal for some other municipal office, entailing different duties, that the voters believed was up for election but in fact was not. Because the nominating petitions indicated only that the office sought was for a full term, one cannot decipher what appeal Marquez had to the voters. In view of the foregoing, we need not decide whether the offices of alderman for the second ward and alderman at large are sufficiently different types of offices so that the failure to specify which office Marquez was pursuing frustrated the minimal appeal component of the purpose of the nominating petitions. Accordingly, we hold that the second requirement of the *Lewis* decision was not satisfied and we reverse the judgment of the Board holding that the nominating papers and petitions were valid.

## III. CONCLUSION

For the foregoing reasons we reverse the judgments of the circuit court of Kane County and the Municipal Officers Electoral Board of the City of Aurora.

Reversed.

BOWMAN, J., concurs.

JUSTICE GILLERAN JOHNSON, specially concurring:

I agree with the majority that Marquez's nominating papers do not substantially comply with section 7—10 of the Election Code (10 ILCS 5/7—10 (West 2002)), which requires that a candidate's nominating papers state the office that the candidate seeks. Thus, I agree that the judgments of the circuit court of Kane County and Municipal Officers Electoral Board of the City of Aurora must be reversed. However, I write separately to distinguish *Heabler v. Municipal Officers Electoral Board*, 338 Ill. App. 3d 1059 (2003), because my position in that case may seem at odds with my position in the present case.

In *Heabler*, the candidate indicated on both his statement of candidacy and his nominating petitions that he was seeking the office of trustee. *Heabler*, 338 Ill. App. 3d at 1060. Although the candidate did not indicate the length of the term he was seeking, I do not believe that this omission confused any of the voters or members of the electoral board. Because the Illinois Municipal Code (65 ILCS 5/3.1—25—5 (West 2002)) defines the office of trustee as a four-year position, it should have been clear that the candidate was seeking a four-year term.

However, in this case, Marquez failed to indicate in his nominating petitions the office he was seeking. Because his nominating petitions failed to include this information, the voters signing his petitions could have been completely unaware of what office Marquez sought. Indeed, the voters could have believed that he was running for any one of the offices up for election within the City of Aurora, including mayor or alderman at large. Marquez's nominating petitions were a basis for potential confusion among the voters, and as such, his nominating papers did not substantially comply with section 7—10 of the Election Code.

In sum, *Heabler* is distinguishable from the present case.