2022 IL App (1st) 22-0753-U

No. 1-22-0753

Order filed June 16, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DONALD JEFFERS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE COOK COUNTY OFFICERS ELECTORAL | ) | |
| BOARD, and its members, KAREN YARBROUGH, | ) | |
| Chairman, by and through her designee EDMUND | ) | No. 22 COEL 16 |
| MICHALOWSKI; KIMBERLY FOXX, | ) | |
| by and through her designee JESSICA M. SCHELLER; | ) | |
| and IRIS MARTINEZ, by and through her designee | ) | |
| GLORIA CHEVRE; KAREN YARBROUGH, | ) | |
| in her official capacity as Cook County Clerk; and | ) | |
| CYNTHIA NELSON KATSENES, | ) | Honorable |
| | ) | LaGuina Clay-Herron, |
| Respondents-Appellees. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's order affirming the decision of the Cook County
Officers Electoral Board which rejected the objections to the nomination papers of
Cynthia Nelson Katsenes for election to the office of Orland Township
Committeeperson of the Republican Party for the June 28, 2022 General Primary
Election. The objector's petition was properly dismissed for failure to sufficiently

provide notice to the candidate of the nature of the objection.

¶ 2 Petitioner Donald Jeffers appeals from a circuit court order that affirmed a decision of the Cook County Officers Electoral Board (Board). The Board dismissed Jeffers's objections to the nomination papers of respondent Cynthia Nelson Katsenes, a candidate in the upcoming 2022 general primary election for the office of Orland Township Committeeperson, Republican Party. Jeffers appeals, contending he fully stated the nature of his objections to Katsenes's nomination papers; namely, that she failed to meet the minimum signature requirement to run for office. For the following reasons, we affirm the circuit court's judgment.[1]

¶ 3                                          I. BACKGROUND

¶ 4 On March 7, 2022, Katsenes filed nomination papers with the Cook County Clerk, seeking ballot placement for election to the office of Republican Township Committeeperson, Orland Township. Her nominating papers included a loyalty oath, a statement of candidacy, and petition sheets containing 314 signatures of individuals who reside in Orland Township and are registered to vote as Republicans.

¶ 5 Jeffers filed a verified objection to her nomination papers. The sole allegation in the objection reads:

"Candidate has submitted a number of signatures less than the statutory minimum number of signatures as required by the Illinois Election Code per 10 ILCS 5/7-10(i). Therefore, Candidate has failed to comply with a mandatory provision of the Illinois Election Code (*Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929). Thus, by the law of the State of Illinois, the name of Candidate is not eligible to appear on the ballot for the Office of the Election."

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 6        The matter was assigned to hearing officer Joseph L. Ponsetto and an initial public hearing was held on March 28, 2022. Katsenes filed a motion to strike and dismiss the objection, arguing that the objector's petition was facially deficient where it simply alleged conclusions of law without pleading facts. Specifically, she contended that Jeffers failed to make a factual allegation as to the number of signatures contained in her nominating papers and further failed to make any factual allegations as to the number of signatures needed to be placed on the ballot for Republican Township Committeeperson of Orland Township.

¶ 7        Jeffers responded, alleging the statutory minimum number of required signatures published by the Cook County Clerk was incorrect since the calculations were based off the 2018 primary election. Accordingly, he argued, the number was calculated contrary to the appellate court decision of *Ramirez v. Chicago Board of Election Commissioners*, 2020 IL App (1st) 200240. Jeffers asserted that, pursuant to *Ramirez*, Katsenes was required to file 1244 signatures with her nomination papers. In calculating this signature requirement, Jeffers relied on Section 7-10(i) of the Illinois Election Code (Code) 10 ILCS 5/7-10 (i) (West 2022). In pertinent part, it provides that "if a candidate seeks to run for township committeeperson, then the candidate's petition for nomination must contain no less than the number of signatures equal to 5% of the primary electors of his or her party of the township, but no more than 8% of those same electors." *Id*. Using the 2020 general election as the base, Jeffers calculated that 5% of 37,323 votes (the number of votes Republican State's Attorney candidate Patrick W. O'Brien received from Orland Township voters in the 2020 general election), reduced by one-third (pursuant to Public Act 102-0015 (eff. June 17, 2021)), was 1244. Accordingly, he requested the Board sustain his objection and remove Katsenes as a candidate on the 2022 Republican primary ballot.

¶ 8          In reply, Katsenes argued that Jeffers's response was not directed to the issues she raised in her motion to dismiss. Rather, she claimed, Jeffers was attempting to use his response as an opportunity to amend his original pleadings. Katsenes contended the Board should strike that portion of Jeffers's argument since an objector's petition cannot be amended after it is filed. See *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69 (1994).

¶ 9          At the hearing on the motion to dismiss, Katsenes's counsel argued that the hearing officer could only consider Jeffers's original filing—as amendments to the objector's petition are not allowed once they have been filed—and the instant original petition did not meet the fact-pleading standard. Further, counsel argued that the *Ramirez* case was improperly decided and, more importantly, inapplicable to the case at hand. In support of their assertion, counsel contended that the required number of signatures (314) was appropriately calculated where the primary election results were utilized in the computation, since Orland Township is a political subdivision. Counsel for Jeffers countered that the rules of the Code of Civil Procedure did not apply in an administrative hearing, and therefore the pleading was not deficient. He emphasized that since Illinois is a common law state, the decisions of the appellate court are binding on all candidates. Therefore, he argued, it was the responsibility of the candidate to be aware of those decisions. As Jeffers cited to section 7-10(i) of the Code in his objection, and *Ramirez* analyzed that section of the Code, Jeffers argued his petition pled sufficient facts to put Katsenes on notice of the nature of his objection. Counsel further argued that, pursuant to *Ramirez*, the required number of signatures ought to have been calculated using the general election results—thus yielding a signature requirement of 1244.

¶ 10          Lastly, Katsenes testified that she relied upon the candidate's guide produced by the Cook County Clerk's Office which specified that she was required to submit between 196 and 314 valid

signatures. Therefore, she filed a total of 314 valid signatures, despite having gathered more signatures than that number. Following all arguments, hearing officer Ponsetto took the matter under advisement.

¶ 11        On April 13, 2022, Ponsetto issued a recommended decision to grant the motion to strike and dismiss the objector's petition, finding that Katsenes properly submitted nominating papers with the requisite number of signatures following the guidelines set forth by the Cook County Clerk. The hearing officer, citing to *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562 (1999), found that the objector's petition was facially deficient for failing to provide specifics regarding the objection. The written recommendation stated that, despite the petition's deficiencies, the objector pled facts in his response to Katsenes's motion to dismiss, and therefore the issues presented would be addressed. Ponsetto determined that relying on the number of votes cast in the 2020 general election to calculate the minimum required signatures for Katsenes would result in an incorrect application of the law, as there were no township offices up for election that year.

¶ 12        Furthermore, he stated that the computation method—supported by the *Ramirez* decision— that Jeffers relied upon to determine the required number of signatures only applied to the office of Ward Committeeperson, not Township Committeeperson. Specifically, the hearing officer found that "wards are part of a city and are not independent political subdivisions or a separate unit of government. Townships are their own political subdivision and a completely separate unit of government." Lastly, Ponsetto found that the requirements posted by the Clerk were "not a miscalculation of the requirement and the Clerk's interpretation should not be disturbed as it is reasonable and compliant with the Election Code." Jeffers thereafter filed a motion, requesting

the Board review Ponsetto's recommendation, and a hearing was held before the Board on April 26, 2022.

¶ 13    In defense of the sufficiency of the objector's petition, counsel for Jeffers argued before the Board that the Code was not applicable in this case and second, despite the Board setting its own rules, the facts were satisfactorily pled. In response to the argument that *Ramirez* should have been cited in the petition and that there should have been a calculation of the correct required number of signatures, counsel reasoned that election results are public record, the *Ramirez* decision put candidates on notice of the correct method of calculation, and the candidate had a responsibility to either consult an attorney or do her own legal research. Accordingly, counsel argued, had Katsenes followed the reasoning in *Ramirez*—of which she ought to have been aware—she would have used the November 2020 general election to compute the minimum number of required signatures. Lastly, counsel argued that the hearing officer's recommendation is contrary to the holding in *Gjersten v. Board of Election Commissioners for City of Chicago*, 791 F. 2d 472 (1986), which stated that the office of ward committeeperson and the office of township committeeperson are the same.

¶ 14    Counsel for candidate Katsenes emphasized that neither the *Ramirez* nor the *Gjersten* decisions examined the differences between townships and wards. They stressed that, unlike a ward, a township is its own political subdivision; therefore, *Ramirez* is inapplicable. Further, counsel contended that Jeffers's objector's petition is facially deficient, where it failed to state anything other than a conclusion of fact or law. Although they acknowledged that the Board's rules are more relaxed, they contended that the Rules of Civil Procedure should still be followed. Finally, counsel opined that, if they were to address the ultimate issue, Katsenes would argue that

she detrimentally relied upon the signature requirements provided by the Cook County Clerk's Office.

¶ 15    After receiving and considering the recommendation of the hearing officer and the record, on April 25, 2022, the Board adopted the hearing officer's recommendation. Board member Gloria Chevre stated on record that the question before them was a "reoccurring issue" and that "sooner or later" a decision would need to be made so that it is "clearly understood in the future what the requisite number of signatures are that are required so that there is no ambiguity." She further stressed that "it should be crystal clear and there should be no doubt as to what the minimum requirement [is] here, the minimum and maximum." Board member Jessica M. Scheller echoed this sentiment, and further stated that she did not know if she "agree[d] with the hearing officer's analysis of *Ramirez*," but concluded that the issue did not need to be addressed, since the Board had held that the objection needed to be more specific and should clearly have stated it was challenging the clerk's published number of requisite signatures.

¶ 16    In its written decision, the Board made the following findings:

"The Hearing Officer submitted his report and recommended decision finding the Objectors failed to comply with section 10-8 of the Election Code and did not state fully the nature of the objections to the nomination papers but made only a bare allegation that the 'Candidate has submitted a number of signatures less than the statutory minimum number of signatures as required by the Illinois Election Code per 10 ILCS 5/7-10(i).' No further factual allegations were pled, and there is no reference to the number of signatures that the candidate submitted, or the number of signatures that were required to be submitted. The Hearing Officer also found that even assuming arguendo that the argument raised after the objection had been filed and outside the four corners of the objection

petition that the signature requirement as published for this officer were incorrect, this was an [*sic*] flawed interpretation of the law. The Ramirez case cited by the objector is inapplicable because townships are separate units of government and independent political subdivisions, unlike wards which are not independent political subdivisions or separate units of government. Therefore the calculation of the signature requirement by the Cook County Clerk was correct, based on the last time townships is [*sic*] a unit of government voted as a unit. The hearing officer granted the motion to Strike and Dismiss. The Hearing Officer found that the objection should be dismissed for providing no specifics regarding the objection."

¶ 17     Pursuant to section 10-10.1 of the Code (10 ILCS 5/10-10.1 (West 2022)), Jeffers filed in the circuit court a petition for judicial review of an electoral board decision. Therein, he alleged that he was aggrieved by the Board's decision to overrule his petition and allow Katsenes's name to appear on the official ballot as a candidate. He contented his objector's petition was not facially deficient, where it alleged the "ultimate fact"—that the candidate submitted fewer signatures than required—which supported his "cause of action"—Katsenes's removal from ballot. Jeffers further claimed that Katsenes is responsible for knowing relevant case law and election results as they pertained to her signature requirement, and she was responsible for calculating the signature minimum before filing her petitions. In support of his claims, Jeffers relied on the *Ramirez* and *Gjersten* decisions, arguing that they applied equally to the office of township and ward committeepersons. However, he argued that—even if he had cited *Ramirez* in his objector's petition or presented calculations to demonstrate the appropriate number of required signatures— it would not have changed the outcome of any proceedings because Katsenes would still have been unable to acquire more signatures. Consequently, she should be removed from the ballot.

¶ 18    Katsenes filed an answer to the petition for judicial review, arguing that the Board properly determined that Jeffers's pleadings did not fully state the nature of his objection. She further contended that Jeffers's reliance on *Ramirez* was misplaced.

¶ 19    Following briefing and argument, the circuit court entered a one-page order finding that the Board's April 26, 2022 decision was not clearly erroneous and therefore denied the petition for judicial review. Accordingly, the court ordered that the name of Cynthia Nelson Katsenes as a candidate for election to the office of Orland Township Committeeperson of the Republican Party shall be printed on the ballot for the June 28, 2022 general primary election.

¶ 20    This timely appeal follows. On June 2, 2022, this court granted Jeffers's motion for an accelerated docket pursuant to Illinois Supreme Court Rule 311(b) (eff. July 1, 2018).

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, Jeffers asserts that the Board should not have dismissed his objections where he fully stated the nature of his objection, as required by section 10-8 of the Code.[2] Second, he argues that pursuant to *Ramirez*, the minimum number of signatures required should have been calculated utilizing the 2020 general election, not the 2018 primary election. Had the appropriate base year been used to compute the requirement for Republican Committeeperson of Orland Township, Jeffers asserts the minimum number would be 1244 signatures, not 196.

¶ 23                                 A. Standard of Review

¶ 24    When an objector's challenge to a candidate's nominating petitions is dismissed by an electoral board, the objector may seek judicial review of that decision pursuant to section 10 of the Code. *Corbin v. Schroeder*, 2021 IL 127052, ¶ 31; 10 ILCS 5/10-10.1 (West 2020). An electoral board is considered an administrative agency. See, *e.g., Jones v. Municipal Officers*

---

[2]This court granted petitioner's motion to allow the parties to file memoranda, in lieu of briefs, on appeal.

*Electoral Board*, 2021 IL 126974, ¶ 12. As such, in an appeal from the decision of an electoral board proceeding, we review the decision of the Board, not the circuit court. See *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village*, 2020 IL 125714, ¶ 10 ("it is the election board's decision that is ultimately before us, and not the decision of the circuit court"); *Ramirez*, 2020 IL App (1st) 200240, ¶ 8.

¶ 25         The appropriate standard of review is determined by the question presented. *Corbin*, 2021 IL 127052, ¶ 32. When an "appeal presents a question of fact, we will not overturn the Electoral Board's decision unless it is against the manifest weight of the evidence." *Id.* A Board's decision regarding factual findings is only contrary to the manifest weight of the evidence "if, after reviewing the evidence in a light most favorable to the agency, we conclude that no rational trier of fact could have agreed with the agency's decision and an opposite conclusion is clearly evident." *Daniels v. Police Bd. of City of Chicago*, 338 Ill. App. 3d 851, 858 (2003). However, when an appeal presents a question of law, the standard of review is *de novo*. *Walker v Agpawa*, 2021 IL 127206, ¶ 17. *De novo* review means we independently interpret questions of law. We are not bound by an administrative agency's interpretation, though its interpretation of a statute may be relevant where there is a reasonable doubt about its meaning. *Engle v. Department of Financial and Professional Regulation*, 2018 IL App (1st) 162602, ¶ 29. When an appeal presents a mixed question of fact and law, we will not disturb the Board's decision unless it is clearly erroneous. *Corbin*, 2021 IL 127052, ¶ 32. Under a clearly erroneous standard, deference is afforded to the Board's experience and expertise, and the Board's findings must be accepted unless, "after reviewing the record, we are left with the 'definite and firm conviction that a mistake has been committed.' " *Roman*, 2014 IL App (1st) 123308, ¶ 70 (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391-95 (2001)).

¶ 26    The petitioner contends *de novo* review is appropriate, while the candidate argues for the more deferential standard of clearly erroneous. Where, as here, a "dispute concerns whether a candidate's nominating papers complied substantially with the Election Code (10 ILCS 5/1-1 (West 2018)), then the question is purely one of law." *Ramirez*, 2020 IL App (1st) 200240, ¶ 10; (citing *Salgado v. Marquez*, 356 Ill. App. 3d 1072, 1075 (2005) ("[T]he question presented to us is whether Marquez's nomination petitions meet the requirements of section 7-10 of the Illinois Election Code [citation]. This is a question of law, which we review *de novo*.")); see also *Zurek v. Cook County Officers Electoral Board*, 2014 IL App (1st) 140446, ¶ 11. Accordingly, the appropriate standard of review in the instant case is *de novo*.

¶ 27                          B. Sufficiency of the Objection

¶ 28    We first address Jeffers's argument that the Board erred in concluding that his objector's petition was facially deficient. Jeffers's argument is centered around a single issue: which election year should be used as the base in determining the minimum signature requirement for candidates for Republican committeeperson for Orland Township. He contends the appropriate base year is the year of the immediately preceding general election, as township voters would have voted for some Republican candidate in that election. In support of this conclusion, Jeffers relies upon the holding in *Ramirez*. In that case, this court upheld the Board's determination that "an officer is elected 'from' a ward when the voters are entitled to cast votes for an officer, even if the officer is not elected exclusively from that ward." *Id.* at ¶ 27. Accordingly, the court found that the proper base year for computing the requirement for Democratic ward committeeperson was the 2018 general election, where 20,634 votes were cast for Jesse White as Secretary of State. *Id.*

¶ 29    Katsenes agrees with the Board's decision and continues to argue on appeal that Jeffers's objections failed to fulfill the requirements of the Code in that he neglected to fully state the nature of his objection to her nomination papers. See 10 ILCS 5/10-8 (West 2022).

¶ 30    We begin by examining the plain language of the relevant statutory provision. Section 10-8 of the Code provides that a candidate's nomination papers "shall be deemed to be valid unless objection thereto is duly made." 10 ILCS 5/10–8 (West 2022). Specifically, it allows for registered voters of the political subdivision or district in which a candidate is to be voted on to file objections to ballot nomination papers. *Id.* It states in relevant portion that an "objector's petition shall give the objector's name and residence address, and shall state *fully* the nature of the objections to the certificate of nomination or nomination papers or petitions in question, and shall state the interest of the objector and shall state what relief is requested of the electoral board." (Emphasis added.) *Id.* Of import, the Code does not specifically address the degree of precision required to satisfy the requirements of section 10-8. However, "the objector to a nominating petition bears the burden of proof." *Daniel v. Daley*, 2015 IL App (1st) 150544, ¶ 33.

¶ 31    As a creature of statute, the Board's authority is derived from our legislature. *Weisner v. Brennan*, 2016 IL App (2d) 160115, ¶ 17. "An objector's petition that fails to strictly comply with section 10–8 of the Code is invalid and is subject to dismissal by an electoral board." *Daniel*, 2015 IL App (1st) 150544, ¶ 28.

¶ 32    "When a statute or code fails to define a word or phrase, then it is the job of the courts to ascertain its meaning." *Ramirez*, 2020 IL App (1st) 200240, ¶ 28 (citing *Brandt Construction Co. v. Ludwig*, 736 Ill. App. 3d, 94, 104-05 (2007)). Since section 10-8 of the Code fails to define "fully," we instead look to the plain-language meaning of the word. The Merriam-Webster Dictionary defines "fully" as an adverb meaning "in a full manner or degree: COMPLETELY."

Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/fully (last accessed June 13, 2022). The first meaning given for "fully" from the Google English dictionary, provided by Oxford Languages, is "completely or entirely; to the furthest extent." https://www.google.com/search?q=define+fully&rlz=1C1GCEB_enUS939US939&oq=define+fully&aqs=chrome.0.69i59j0i512j0i67j0i512l7.2591j1j4&sourceid=chrome&ie=UTF-8 (last accessed June 13, 2022). Finally, as defined by the Collins English Dictionary, "fully" "means to the greatest degree or extent possible." https://www.collinsdictionary.com/us/dictionary/english/fully (last accessed June 13, 2022). Jeffers's entire objection was composed of one meagre sentence alleging Katsenes submitted less than the minimum number of required signatures. As later evinced, Jeffers's theory of the case was based on an exacting analysis of the *Ramirez* decision, election cycles, and the township's voting history. Under even the most generous definition, we find that Jeffers's single sentence could hardly be interpreted as having *fully* stated the nature of his objection to the nomination papers, as required pursuant to section 10-8 of the Code. 10 ILCS 5/10-8 (West 2022).

¶ 33    Rather, we find his objection akin to accusing a stranger of causing injury without providing any explanation of what was injured, or how, when, or where the injury occurred—an insufficient claim before any court. While it may provide a conclusion of fact or law, it does not provide the essential information the other party requires to defend against the accusation. Similarly, here Jeffers's objection utterly failed to include any requisite factual allegations to provide suitable notice to the candidate. He failed to (1) detail how many signatures Katsenes had submitted, (2) what year he believed to be the correct benchmark for calculating the signature requirement, (3) identify which Republican candidate received the most votes in the township in that base year election, (4) particularize what he believed the proper quantity of required

signatures ought to have been, (5) cite to any case law supporting his proposition, or (6) provide any calculations to support his purported signature requirement.

¶ 34　　Contrary to Jeffers's contention, it was not remotely clear from his scarce sentence what aspect of the candidate's signatures he was challenging. There are a myriad of circumstances that could lead to an objector's assertion that a candidate provided an insufficient quantity of signatures—among others, either the signators did not reside at the addresses shown in the petition; the signators were not registered to vote at the addresses listed; or the signatures were not genuine. While he provided more specificity to his argument in later filings, it is well established that "[s]ection 10–8 contains no provision for amendments to objections," and Illinois courts have likewise held that the Election Code prohibits objection amendments. *Weisner*, 2016 IL App (2d) 160115, ¶ 17 (all objections to nominating papers must be contained within the objector's petition; no new objections may subsequently be raised or considered). As ballot access is a substantial right that should not be denied lightly (see *Hacker v. Halley*, 2021 IL App (2d) 210050, ¶ 11) and since ballot access challenges are—by nature—extremely expedited, it is vital to provide the candidate with early, thorough notice of an objection so that they may prepare a defense. The Board thus correctly dismissed Jeffers's objection.

¶ 35　　　　　　　　　　　C. Required Number of Signatures

¶ 36　　Lastly, Jeffers claims that, pursuant to 10 ILCS 5/7-10(i), (k) (West 2022), the minimum number of signatures required to be included on the June 28, 2022 primary election ballot for the office of Orland Township Republican Committeeperson should be 1244. He further alleges that, pursuant to this court's decision in *Ramirez*, "the last regular election at which an officer was regularly scheduled to be elected from [Orland Township]" was the November 2020 general election, rather than the 2018 primary election that the Cook County Clerk's office relied upon.

Accordingly, Jeffers maintains that Katsenes—who filed 314 signatures (the maximum amount allowed under the Clerk's office calculations)—is not relieved of her obligation to submit the minimum required by statue simply because the Cook County Clerk posted an incorrect signature minimum. Katsenes, on the other hand, contends that *Ramirez* is inapplicable because the decision analyzes the signature requirement for ward committeeperson, not township committeeperson. As townships are independent units of government, as opposed to wards, which are a subdivision of a city, Katsenes maintains Jeffers's reliance on *Ramirez* is inappropriate.

¶ 37        As we have determined that the objector's petition was properly dismissed as facially deficient, we decline to address Jeffers's second argument regarding the appropriate interpretation of 10 ILCS 5/7-10(i), (k) (West 2022) in computing the signature requirement for the office of township committeeperson.

¶ 38                                    III. CONCLUSION

¶ 39        For the foregoing reasons, we affirm the judgment of the circuit court, which affirmed the Board's decision finding Jeffers's petition was facially deficient for failing to provide specifics regarding the nature of his objection. The mandate shall issue *instanter*.

¶ 40        Affirmed.